**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-3510

_____

UNITED STATES OF AMERICA

v.

RASHEED McNAIR,
Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:18-cr-00281-001)
District Judge:  Honorable Peter G. Sheridan

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 16, 2021

_____

Before:  CHAGARES, BIBAS, and FUENTES, <u>Circuit</u> <u>Judges</u>.

(Filed:  November 23, 2021)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

CHAGARES, Circuit Judge.

A jury convicted Rasheed McNair of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He now challenges the District Court's decision to preclude his defense counsel from conducting re-cross examination of the Government's only fact witness, Detective Harry Steimle. We will affirm the judgment of the District Court for the reasons we explain below.

I.

We write only for the parties, so our summary of the facts is brief. On February 18, 2018, Steimle – a member of the Trenton Police Department's Street Crimes Unit – was on duty and patrolling in Trenton with a fellow detective. Neither Steimle nor his fellow detective were wearing body cameras. Steimle observed a person (who would eventually be identified as McNair) wearing a black ski mask and standing in an open doorway to an apartment building. McNair was holding an object that Steimle believed resembled a firearm. Steimle approached the building and heard a male yell, "squalay," a commonly used alert of police presence. Steimle exited his car, shined a flashlight in McNair's direction, and ran toward McNair and the entrance of the apartment building. McNair tucked away the item he was carrying and ran inside the apartment building and up the stairs.

Steimle entered the apartment building, drew his handgun, and shouted that all parties should stop and raise their hands. Two other individuals in the building stopped on the second floor and followed Steimle's instructions, but McNair continued to run up the stairs. Steimle testified that as McNair turned to the second floor, McNair "began

2

removing [the] item from the front of his jacket." Appendix ("App.") 74. Steimle further testified that he "observed a black slide with a green handle of a semi-automatic firearm." App. 75. Finally, Steimle testified that McNair shoved the item underneath a doormat located in front of Apartment 3B. Steimle stated that he was approximately three feet away from McNair when he observed this. Then, McNair walked down the stairs and was placed under arrest. Backup officers wearing body cameras arrived at the scene shortly after. Steimle testified that he did not lose sight of the item sticking out from underneath the doormat from the time McNair placed it there until another officer recovered a gun from underneath the doormat.

McNair was charged with being a felon in possession of a firearm, and he proceeded to trial. At trial, Steimle was the only fact witness presented by the Government. During the direct examination of Steimle, the Government asked Steimle whether he was issued a body camera as a Street Crimes detective (he answered, "no"), whether Steimle had previously worn a body camera when he was a patrol officer (he answered, "yes"), whether Steimle was familiar with how body cameras worked (he answered, "yes"), and whether any of the officers who arrived at the scene wore a body camera (he answered, "yes"). App. 80.

During cross-examination, McNair's defense counsel attempted to discredit Steimle by focusing on the fact that he was not wearing a body camera. Defense counsel asked Steimle a series of questions about his lack of a body camera as a Street Crimes detective, including questions about the Trenton Police Department's policy for body cameras. Steimle testified that only officers in the uniform patrol bureau were required to

3

wear body cameras. Steimle explained that since he was in the Street Crimes Unit, he was not required to wear a body camera. Defense counsel asked Steimle whether Steimle believed body cameras would be helpful to his job. Steimle testified that witnesses, such as confidential informants, may be reluctant to come forward if they were being recorded by a body camera for fear of retaliation.

On redirect, the Government asked Steimle to explain whether there were parts of his job that would be made more difficult by wearing a body camera. Steimle testified: "[p]eople know we do not wear body cameras, and they are more keen to speak to us, because they fear retaliation from shootings . . . ." App. 182. The Government asked Steimle whether he "personally had the experience where someone came up to [him] while [he was] on the job and gave [him] information." App. 182–83. Steimle answered, "yes." The Government then asked whether Steimle believed that the lack of a body camera had anything to do with that. Steimle answered that he did and explained that he knew people were comfortable speaking with him.

After redirect, defense counsel rose to conduct re-cross examination of Steimle. The District Court informed defense counsel that he was not entitled to conduct re-cross examination. The jury convicted McNair, and he was sentenced to 120 months of imprisonment. McNair timely appealed.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. The District Court has discretion over the conduct

4

of a trial and the presentation of testimony.  United States v. Riggi, 951 F.2d 1368, 1375 (3d Cir. 1991).  As a result, we review for abuse of discretion.[1]  Id.

### III.

A trial court "has wide discretion to restrict recross-examination, especially when no new matters have been raised on redirect."  Id. at 1374.  But when materially new matters arise on redirect examination, the Confrontation Clause of the Sixth Amendment "mandates that the opposing party be given the right of recross-examination on those new matters."  Id. at 1375.  This is because where a new matter is brought out on redirect examination, "the defendant's first opportunity to test the truthfulness, accuracy, and completeness of that testimony is on recross examination."  Id. at 1376.  Redirect raises a "new matter" when it "encompasses a subject outside of the scope of direct examination or when a witness offers materially different testimony regarding a subject first introduced on direct."  United States v. Blankenship, 846 F.3d 663, 669 (4th Cir. 2017) (internal quotation marks omitted).  In contrast, redirect does not raise new matter when the testimony it elicits "only expands or elaborates on the witness' previous testimony." Id. (cleaned up).

The denial of re-cross where new material arises in redirect is a ground for reversal if the denial was harmful.  Riggi, 951 F.2d 1376.  See also United States v. Ross, 33 F.3d 1507, 1518 (11th Cir. 1994) (failure to allow re-cross is subject to harmless error

---

[1] The Government argues that McNair failed to raise an objection to the District Court's denial of re-cross and that as a result, plain error review applies.  It is unnecessary for us to reach this issue because we will affirm the District Court's ruling under the abuse of discretion standard.

analysis). To avoid reversal, the Government must demonstrate that the violation to the defendant's confrontation rights was harmless beyond a reasonable doubt. Riggi, 951 F.2d 1376. Whether the denial is harmful depends on the "importance of the witness' testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case." Id.

McNair contends that the Government's redirect examination of Steimle elicited new information and that, as a result, the District Court abused its discretion by denying McNair the opportunity for re-cross. We disagree. The Government did not elicit new information on redirect. McNair alleges that the following questions from redirect elicited new material: (1) whether Steimle had personal experiences where a person approached him to supply information; and (2) whether Steimle's lack of a body camera had anything to do with that. These questions were a follow up to the questions posed by defense counsel on cross-examination, and Steimle provided no new information in his answers. Indeed, he reiterated his answer from cross-examination: that witnesses were more comfortable speaking with him if he did not have a body camera. McNair argues that eliciting information from Steimle's personal experience was new in redirect. But Steimle did not actually provide new information in his answers. Because the Government elicited no new information on redirect, the District Court did not abuse its discretion in denying re-cross. See United States v. Payne, 437 F.3d 540, 550 (6th Cir. 2006); Riggi, 951 F.2d at 1375.

6

Even if Steimle's answers on redirect constituted new information, McNair's argument fails harmless error analysis. The only information McNair contends was new was that Steimle knew from personal experience that witnesses were more comfortable speaking with him without a body camera. While Steimle's testimony was no doubt important to the Government's case, his personal experience speaking with potential witnesses is irrelevant to what he testified that he witnessed in this case. Moreover, Steimle's testimony is cumulative of the testimony already elicited during the cross-examination. See Blankenship, 846 F.3d at 669. As a result, any new information elicited in redirect examination was harmless beyond a reasonable doubt.

## IV.

For the foregoing reasons, we will affirm the judgment of conviction.